Estelle RICE et al., copartners doing business under the firm name and style of Jacob Rice & Sons, as owners of THE scow JOAN R, Libellants,

v.

NEW YORK TRAP ROCK CORPORATION, Respondent,

v.

RED STAR TOWING & TRANSPORTATION COMPANY and Colonial Sand & Stone Co., Inc., Respondents Impleaded.

Petition of Estelle RICE et al., copartners doing business under the firm name and style of Jacob Rice & Sons, as owners of the scow Joan R, in a cause of limitation of and/or exoneration from liability.

United States District Court
S. D. New York.
Sept. 2, 1959.

Supplementary Opinion Sept. 29, 1959.

Macklin, Speer, Hanan & McKernan, New York City, for libellants. Leo F. Hanan, Charles J. Carroll, Jr., New York City, of counsel.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for respondent New York Trap Rock Corp. Henry C. Eidenbach, New York City, of counsel.

Alexander, Ash & Schwartz, New York City, for respondent impleaded Red Star Towing & Transportation Co. Edward Ash, New York City, of counsel.

Foley & Martin, New York City, for respondent impleaded Colonial Sand & Stone Co., and Frank S. Jacobus. Christopher E. Heckman, Edward J. Ryan, New York City, of counsel.

CASHIN, District Judge.

These suits involve the capsizing of the loaded deck scow Joan R, owned by the individual libellants, on Sunday morning, May 23, 1954. The first action was brought by the owners of the Joan R against the charterer of the scow, New York Trap Rock Corporation. The libel alleges that the Joan R was turned over to the charterer in good condition but returned damaged. Respondent impleaded Red Star Towing & Transportation Company and Colonial Sand & Stone Co., Inc. on the grounds that it was due to their negligence that the Joan R was damaged.

The second action involves a petition for exoneration from or limitation of liability filed by the owners of the Joan R. Claims in this proceeding have been filed by Colonial Sand & Stone Co., Inc. as the owner of the scow Central Light, Frank S. Jacobus as the owner of the scow J. P. Curry and New York Trap Rock Corporation as owner of the cargo aboard the Joan R at the time of the mishap.

### Findings of Fact

1. On March 29, 1954 the New York Trap Rock Corporation chartered the wooden deck scow Joan R from Jacob Rice & Sons. The charter was the common oral demise charter which provided that the scow Joan R would have a captain whose base wage was to be paid by Jacob Rice & Sons but whose overtime was to be paid by the charterer, New

York Trap Rock Corporation. The Joan R, which is 112.4 feet long, 33.2 feet wide and 9.7 feet in depth, was to be returned in the same condition as received less ordinary wear and tear.

2. On April 23, 1953 the scow Joan R was drydocked and extensive repairs were made. Two weeks before the scow was chartered it was inspected by an inspector of Jacob Rice & Sons and certain repairs were made although the boat was not drydocked at this time. During the period from March 29, 1954 until May 19, 1954 the Joan R made six trips from New York Trap Rock quarries at Haverstraw, Clinton Point and Tompkins Cove to piers in the New York Metropolitan area, without incident.

3. On May 19, 1954 the Joan R was inspected at the New York Trap Rock quarry at Clinton Point. On Thursday, May 20, 1954, the Joan R was properly loaded with 545 cubic yards of stone, consigned to Colonial Sand & Stone Co., Inc., and then inspected again. At both inspections the scow was found to be in good condition with no more than two inches of water in her. The pumps of the Joan R do not operate in less than two inches of water and having this amount of water is normal for scows of the type of the Joan R.

4. Colonial Sand & Stone Co., Inc. wished the scow Joan R to be delivered to its pier at the foot of Roosevelt Street "over the weekend". The Joan R was towed to Pier 72 North River, which is the area used for mooring New York Trap Rock scows, without incident, and arrived there around 7:15 P.M. on Friday, May 21, 1954. The New York Trap Rock dispatcher then ordered the Red Star Towing & Transportation Company to deliver the scow Joan R to Roosevelt Street "over the weekend".

5. On Friday night, the tug Consultor II, owned and operated by Red Star Towing & Transportation Company, took the Joan R from Pier 72 North River to the Colonial Sand & Stone Co., Inc. pier at the foot of Roosevelt Street. The towing was done without incident and was accomplished by 12:30 A.M.

Saturday. The Joan R was tied fast to another scow, the J. P. Curry, which was tied to the pier. There was no other safe place to tie up the Joan R and it is customary to tie up scows in this manner.

6. The J. P. Curry, owned by Jacobus Transportation Co., was loaded with sand and lying portside to the bulkhead. The Joan R's portside was moored alongside of the starboard side of the J. P. Curry. The captain of the J. P. Curry was aboard his scow from 8:00 A.M. to 4:00 P.M. on Saturday, May 22, 1954. When he left at 4:00 P.M. both the J. P. Curry and the Joan R were all right and both were on an even keel.

7. At 6:00 P.M. Saturday, May 22, 1954, the scow Central Light, owned by Colonial Sand & Stone Co., Inc., was made fast to the Joan R. The three scows thus jutted out from the pier with the J. P. Curry tied to the pier. All the scows were bow upstream. The captain of the Central Light left about 7:00 P.M. Saturday and walked across the bow of the Joan R and found nothing wrong.

8. On Sunday, May 23, 1954, Mr. R. C. Smith, while driving on the East River Drive between 10:00 and 11:00 A.M., noticed that one of the three scows had a serious list. On finding no one around he telephoned Mr. Phillip Rice of Jacob Rice & Sons. Smith then called McAllister Towing & Transportation Co. and requested a tug with a siphon.

9. The tug James McAllister arrived with a siphon but before anything could be done the Joan R capsized, dumped her cargo, struck the Central Light and turned over to port and landed on the scow J. P. Curry. The captain of the tug James McAllister and the deckhand both testified that they did not see the Joan R strike the scow Central Light, which was on the starboard side of the Joan R. However, Colonial Sand & Stone Co., Inc. claim that their scow Central Light was hit and suffered damages in the amount of $2,963. The testimony of the captain of the Central Light shows that he found some damage on his scow after the Joan R had capsized, and Mr.

Smith, who called the tug, testified that the Central Light was struck.

10. The scow Joan R was subsequently salvaged and towed to the dock of Baldwin and Allison Drydock Co., Inc., where a survey was held on June 10, 1954. Mr. Allison, who operates the drydock company, testified on behalf of the owners of the Joan R that he found no leaks at all in the boat, that none of the bottom seams were calked, and that no work at all was done on the bottom. Mr. Finkenaur, a naval architect and consulting engineer, testified on behalf of Colonial Sand & Stone Co., Inc. and Jacobus Transportation Co., that he found three places on the bottom of the Joan R where water might enter the hull.

Conclusions of Law

A. On the libel of Jacob Rice & Sons as owners of the scow Joan R against New York Trap Rock Corporation:

I. The charterer, New York Trap Rock Corporation, is guilty of negligence in failing to return the scow Joan R to libellants in the same condition received less ordinary wear and tear.

II. Jacob Rice & Sons are entitled to a decree against New York Trap Rock Corporation with costs.

III. The impleading petition is dismissed with costs to both impleaded respondents as against New York Trap Rock Corporation.

B. On the limitation proceedings:

I. The petition for limitation of liability on the part of the owners of the scow Joan R is granted.

II. The claim of New York Trap Rock Corporation is denied with trial costs to the petitioner.

III. The claims of Colonial Sand & Stone Co., Inc. as owner of the Central Light, and of Frank S. Jacobus as owner of the scow J. P. Curry, are allowed with trial costs against the petitioner.

In discussing the obligation of a demise charterer of a scow without motive power this court in The Moran No. 10, D.C., 41 F.2d 255, 256, stated that—

"The law on the subject is well settled. The charterer is liable for any damage to the boat resulting from his own negligence or the negligence of any one to whom he intrusts her. The burden of proving negligence is upon the owner, but he makes out a prima facie case if he can go no further than to show that the boat was damaged during the charter period and then the burden of explanation, or, as it is sometimes said, of carrying on, lies upon the charterer. In the absence of exculpatory evidence, a presumption of negligence arises against him."

The Joan R was seaworthy when chartered to the New York Trap Rock Corporation. It was damaged while in the charterer's control. Thus, the burden is on the charterer to rebut the presumption of negligence which arises against it. This it has not done. The presumption does not cast upon the respondent-charterer the ultimate burden of proving how the damage occurred. However, he must show either the cause of the accident and that he in no way contributed to it, or that he took the requisite care of the scow so that regardless of how the accident occurred it could not have been caused by his negligence. Richmond Sand & Gravel Corp. v. Tidewater Constr. Corp., 4 Cir., 1948, 170 F. 2d 392. In the opinion of this court the respondent has not rebutted the presumption of negligence against it. Respondent does not show how or why the accident occurred. Nor has it shown that regardless of how the accident occurred it would not be liable. For example, the scow could have been misloaded on one of its previous trips and this could have caused undue strain and opened some of the seams; or the scow could have been damaged on one of its previous trips. We have no testimony at all regarding the trips of the Joan R after she was loaded on May 7, 1954 and May 20, 1954 at Clinton Point. It is always difficult to decide whether or not a presumption has been rebutted, and it is especially difficult in this case since there seems to be no apparent reason for the capsizing of the Joan R. However, it is the opinion of this court that respondents have not rebutted the presumption.

■ The petitioners, in order to take advantage of the limitation of liability statutes (46 U.S.C.A. § 183 et seq.) need show only that they own the Joan R; that they as owners are being sued for some damage done by their boat, and that any damage was incurred without their privity and knowledge. As was stated above, the Joan R was seaworthy when the charterer, New York Trap Rock Corporation, took possession of her. Thus, the owners of the Joan R are not liable for any loss of cargo on the charterer's part. As the Court of Appeals for this Circuit stated in The Harper No. 145, 2 Cir., 42 F.2d 161, 164:

"The owner turned over a new seaworthy barge to the charterer, and, inasmuch as she received injuries which rendered her unseaworthy while in the possession of the latter, the negligence of the charterer is presumed in the absence of any explanation. These unexplained injuries caused her sinking and the loss of the cargo. The charterer is therefore primarily liable for libelant's [the owners of the cargo] damages as between it and the scow Harper No. 145." (Matter in brackets added.) ·

It is true that in the present case the scow Joan R was not a new one. However, it was seaworthy when received by the charterer.

Neither Colonial Sand & Stone Co., Inc., as owner of the scow Central Light, nor Frank S. Jacobus, as owner of the scow J. P. Curry, has a valid objection to the owners of the Joan R limiting their liability. There was no contract between claimants and the owners of the Joan R. Nor did the owners of the Joan R warrant the scow's seaworthiness to these claimants. Thus claimants can only recover if they prove that the owners of the scow Joan R were negligent. This they have failed to do.

■ It is true that these claimants are aided by a presumption of negligence arising from the accident itself. The Buffalo, 2 Cir., 1932, 56 F.2d 738. However, as has been stated, the Joan R was seaworthy when the charterer took possession of her and any subsequent fault was not within the privity and knowledge of the petitioners. Claimants allege various negligent acts or omissions on the part of the owners, such as failure to instruct the barges to pump the Joan R every second day or to explain any incident which may have occurred while the Joan R was in transit from Clinton Point on May 20, 1954 up to her arrival at Roosevelt Street on May 22, 1954.

■ These alleged negligent acts or omissions do not support claimants' case against the owners of the Joan R. For the period in question the charterer, New York Trap Rock Corporation, was the owner *pro hoc vice* of the scow. It is true that the actual owner of the Joan R paid the captain of the scow his base wage, but the charterer paid the captain for any overtime. Moreover, the charterer had full control over the captain and could have ordered him to stay aboard the Joan R at any time. Claimants rely on the case of Jacobus v. The Triboro No. 22, 2 Cir., 1959, 267 F.2d 547, 548, for the proposition that the owners of the scow are liable when the scow capsized over the weekend with no one aboard. However, that case is distinguishable from our present case because in the Jacobus case the scow

" * * * had been maintained poorly and in a niggardly fashion, that she had been subject to a twist and had been repaired in a makeshift manner by means of wedges, that she had not been caulked for two years and had been used on a hard run. Under these circumstances the district judge concluded that it was negligent to leave her unattended over a three day holiday weekend while berthed in an open mooring and fully loaded."

In contrast, the Joan R was in good condition, was not maintained in a niggardly fashion and was not subject to any twists.

■ It would not be useful to go into the various cases on this subject and discuss them. This privity or knowledge

on the part of the owners must be actual and not merely constructive. It should involve some personal participation by the owner in some fault or negligence contributing to the injury suffered. The 84–H, 2 Cir., 1923, 296 F. 427. In the present case no acts of negligence have been proven. The claimants have nothing to support their charge except the presumption which arises from the accident itself. This presumption establishes only a prima facie case which the owners of the Joan R have fully met by showing that when control of the scow passed to the charterer, the scow was in seaworthy condition.

Settle an interlocutory decree in each action.

### Supplementary Opinion

CASHIN, District Judge.

It has been suggested by proctors for the petitioners in A 183–367 that, because the petitioners were found free of negligence, exoneration, rather than limitation, should have been granted. I do not agree with this contention of the petitioners.

 It is hornbook law that a maritime lien arises in favor of a party injured by the negligence of anyone lawfully in control of a vessel. This result follows despite the fact that the owner has absolutely no control over the vessel. See Robinson on Admiralty, pp. 363–368; The Law of Admiralty by Gilmore and Black, Ch. IX(3), p. 494; The Barnstable, 1901, 181 U.S. 464, 21 S.Ct. 484, 45 L.Ed. 954; Burns Bros. v. Central R. R. of New Jersey, 2 Cir., 1953, 202 F.2d 910; The Stamford, D.C.S.D.N.Y.1929, 35 F.2d 55. The main opinion held that there was an unrebutted presumption of negligence upon the part of the charterer in whose possession the vessel lawfully was. Under those circumstances, a maritime lien arises in favor of those injured through that negligence, namely, the claimants Colonial Sand & Stone Co., Inc. and Frank S. Jacobus, or, stated in another way, the vessel is liable *in rem* to those claimants. Of course, *in rem* jurisdiction exists since upon the filing of the petition for limitation of or exoneration from liability the petitioners constructively surrendered the vessel to the jurisdiction of the court by the posting of an *ad interim* stipulation.

Petitioners rely strongly on The 84–H, 2 Cir., 1923, 296 F.2d 427. That case, however, is completely inapposite. There, the owner of the vessel was in control of it and an employee was injured while working aboard the vessel. The court held that there was no negligence on the part of the owner or any of its servants and, thus, that exoneration should have been granted. Here, as pointed out above, a finding of negligence upon the part of one lawfully in control of a vessel has been made. Thus, exoneration must be denied even though limitation is granted.