Roy **HERNANDEZ** Plaintiff,

v.

Daniel K. **ROBERTS, et al, Defendants.**

No. 82–924–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 8, 1988.

Michael Sikes, Merritt, Sikes & Craig, Miami, Fla., for plaintiff.

Hugh J. Morgan, Key West, Fla., for defendants.

## FINAL ORDER

JAMES LAWRENCE KING, Chief Judge.

This action was tried to this court on November 17, 1987. Pursuant to Fed.R. Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

On a clear, calm, sunny day, on or about April 4, 1982, the plaintiff, his wife, nephew, son, and daughter were fishing in navigable waters west of Key West, Florida. The fishing party was aboard plaintiff's 19' 9" Seacraft boat, powered by 225 horsepower Mercury outboard engine.

While the Seacraft was heading outbound to fish, the plaintiff observed a vessel, later identified as the "Standford Morse," which was drifting in the distance. The Stanford Morse is a United States registered vessel with a gross tonnage of 96.6 tons, a net tonnage of 65 tons, 69.2' in length, and has a hull depth of 9.9'. Approaching the Standford Morse the plaintiff ascertained that the vessel was unmanned. The vessel was located in approximately twenty-five feet of water and was slowly drifting toward shallower water.

The plaintiff boarded and conducted a thorough search of the vessel. Finding nobody aboard he forcibly entered the vessel's locked engine room with a pair of bolt cutters. The plaintiff then attempted to tow the Standford Morse with a synthetic line, but the line was too light for the job. The plaintiff, exercising poor judgment in his reckless attempt to tow the much larger vessel with a wholly inadequate line, placed himself and his family in danger of the synthetic line snapping and possibly injuring one of them. The towing attempt was unsuccessful.

The plaintiff reboarded the Stanford Morse. The Stanford Morse was equipped with its own anchor, which was in working order. Instead of simply using the Stanford Morse's anchor, the plaintiff unnecessarily started the Stanford Morse's engines and moved the vessel under its own power. Before starting the engines the plaintiff checked the lubrication and oil in the engines. Again exercising poor judgment the plaintiff attempted to anchor his Seacraft anchor to anchor the much larger vessel, instead of using the Stanford Morse's own anchor. Predictably, the plaintiff's attempts at towing, driving, and, anchoring the much larger vessel with his smaller vessel, proved unsuccessful. Finally, he initiated radio contact with the Coast Guard. The plaintiff remained with the Stanford Morse for approximately five hours until the Coast Guard arrived and towed the larger vessel back to Key West.

On the day of the salvage, April 4, 1982, the Stanford Morse was owned by the defendants and was utilized as a shrimping vessel. On or about April 4, 1982, the Stanford Morse was stolen from her moorings by persons unknown.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Fed R.Civ.P. 9(h).

### A. PLAINTIFF'S EFFORTS CONSTITUTE A SALVAGE

■ The court concludes that the plaintiff's efforts constituted a salvage. To determine whether a salvage occurred the court must find three elements: (1) marine peril; (2) voluntary services rendered; and (3) success in whole or part. *B.V. Bureau Wijsmuller v. United States,*

702 F.2d 333 (2d Cir.1983) (citing *The "Sabine"*, 101 U.S. (11 Otto) 384, 25 L.Ed. 982 (1880); *Treasure Salvors v. Unidentified, Wrecked And Abandoned Sailing Vessel,* 556 F.Supp. 1319, 1339–40 (S.D.Fla.1983). *See generally* M. Norris, 3A Benedict on Admiralty §§ 63–97 (1987) (hereinafter *"Benedict."*)

### 1. MARINE PERIL

The court concludes that the Stanford Morse was in a slight degree of marine peril. At a minimum, a vessel must be in some apprehension of danger, even if the danger is not immediate or absolute. *B.V. Wijsmuller,* 702 F.2d at 338; *Benedict* § 65, n. 1 (citing cases). In the instant case the Stanford Morse was abandoned and unanchored. It was drifting, however slowly, toward shallower waters. Although she was not in immediate or absolute harm, a stranded vessel on the open sea is almost always at some risk. As Judge Augustus Hand opined in *Navigazione Generale Italiana v. Spencer Kellogg & Sons,* 92 F.2d 41, *cert. denied* 302 U.S. 751, 58 S.Ct. 271, 82 L.Ed. 580 (1937), "when a vessel is stranded, she and her cargo are practically always in a substantial peril. Such a vessel is helpless because she cannot pursue her intended voyage or deal effectively with any emergency which may arise." *Id.* at 44.

In the present case the weather was good and the sea calm. The Stanford Morse was in twenty to twenty-five feet of water. Shallower waters were in the vicinity of the vessel, thereby creating a potential danger. The court has found, in its findings of facts, that the vessel was drifting, although slowly, toward shallower water. Although no one could predict where the sea and the sky might have taken the Stanford Morse, nor could one know whether she would have met the ocean bottom, or some other damaging fate, the minimal apprehension of danger existed. The potential for danger is what is contemplated in the "apprehension of danger" test developed by the courts in over a century of admiralty jurisprudence. The court, therefore, concludes that although the Stanford Morse was not in an immediate or absolute danger, she was, in a minimal apprehension of danger to satisfy the marine peril element of salvage.

### 2. THE SALVAGE WAS VOLUNTARY AND SUCCESSFUL

As to the elements of voluntariness and success of the salvage operation, the court concludes that both elements were satisfied. The plaintiff had no legal duty to salvage the boat. He was not a crew member or under any other legal obligation to act as he did. Acting without a legal duty to salvage the vessel, the plaintiff acted voluntarily. *B.V. Wijsmuller,* 702 F.2d at 338; *Unnamed Master & Crew v. Certain Unnamed Vessel,* 592 F.Supp. 1191, 1194 (S.D.Fla.1984) (motive is not a determining factor in assessing voluntariness).

Finally, the court concludes that the salvage operation was a success. A lack of at the least partial success, no matter how great the effort, will preclude any award. *The Blackwall,* 77 U.S. (10 Wall.) 1, 19, 19 L.Ed. 870 (1869). Despite the plaintiff's exercise of poor judgment, which placed his family and him in potential danger, the plaintiff's actions ultimately resulted in the Coast Guard coming to the rescue of the Stanford Morse. His action of calling the Coast Guard and staying with the vessel until the Coast Guard arrived, contributed to the success of the salvage operation. *The Annie Lord,* 251 F. 157 (D.Mass.1917); *see generally Benedict* §§ 88–92.

### B. VALUATION OF SALVAGE AWARD

To value a successful salvage operation the court must follow the long established six-factor test. *The Blackwall,* 77 U.S. (10 Wall.) 1, 14, 19 L.Ed. 870 (1869); *Treasure Salvors,* 556 F.Supp. 1319, 1340 (S.D.Fla.1983). *Cobb Coin Co. v. Unidentifed, Wrecked and Abandoned Sailing Vessel,* 549 F.Supp. 540, 547 (S.D.Fla.1982); M. Norris 3A Benedict on Admiralty paragraph 244 n. 1 (1987). The six factors are:

(1) The degree of danger from which the property was rescued;

(2) The value of the property saved;

(3) The risk incurred by the salvors in securing the property from the impending peril;

(4) The promptitude, skill and energy displayed in rendering the service and saving the property;

(5) The value of the property employed by the salvors in rendering the service and the danger to which such property was exposed; and

(6) The labor expended by the salvors in rendering the salvage service.

*Benedict* § 244; *Treasure Salvors*, 556 F.Supp. at 1340. All six factors must be taken into account to determine the proper award, *B.V. Wijsmuller*, 702 F.2d at 340, however, the degree of danger from which the property was rescued is the most important factor in determining the amount of the award. *Benedict* § 245; *Conolly v. S.S Karina II*, 302 F.Supp. 675 (E.D.N.Y. 1969); *United States v. Barge CBC 603*, 233 F.Supp. 85 (E.D.La.1964).

In the instant case, the court has found that the Stanford Morse was in a "minimal" apprehension of danger. This minimal apprehension of danger was sufficient to meet the element of a marine peril, but not enough of a danger to warrant a generous award. Although the vessel was stranded, the seas were calm, the weather clear and sunny, and the vessel was in twenty to twenty-five feet of water. While the vessel was drifting slowly toward shallower water, there was no immediate or absolute threat of harm, nor was there any proof that the vessel would actually hit bottom.

As to the risk incurred by the salvor, the court finds that the risk was minimal. The plaintiff argued that he experienced great risk when attempting to tow the Stanford Morse with the synthetic line with his Seacraft, but that risk was created by his own poor judgment. There was no imminent threat to the Stanford Morse. No lives or property were at stake. There simply was no need to attempt to pull a 96.6 ton vessel with a small pleasure craft, connected only by a wholly inadequate synthetic line. After all the plaintiff's attempts at towing and anchoring, he finally did the most obvious and logical act, he radioed the Coast Guard.

The plaintiff's actions demonstrate that he exercised little skill, and only self-imposed energy, in his salvage of the vessel. The plaintiff did, to his credit, check the oil before starting the engines, however, there was no need to start the engines without figuring out an adequate method of securing the tow in the first place. As discussed above, he placed his family and himself unnecessarily at risk, through his poor judgment.

The value of the property employed in the salvage operation was minimal. He used an inexpensive piece of synthetic line and perhaps a small amount of fuel. He and his family were already heading outbound to their fishing destination when they happened upon the Stanford Morse. Likewise, the time and labor expended were minimal, except for the plaintiff's futile attempts to tow a vessel many times larger than his pleasure craft.

The court must balance the totality of the circumstances in reaching its determination. In those cases where the danger was great to life and property, a relatively short salvage effort might still result in a generous reward. *See, e.g., The Toledo*, 136 F. 959 (S.D.N.Y.1905). In the instant case, the plaintiff's self created dangers cannot be regarded as adding to the time factor in determining the *Blackwall* calculus, nor should it count against him. The time he spent waiting for the Coast Guard did not preclude him or his family from doing what they came to the ocean to do—fish.

Finally, the court must look at the value of the vessel salvage. The court, in its findings of facts, determined the value to be between $155,000 and $175,000.

Putting all these factors together, as this court must, the court determines that the plaintiff is entitled to an award of $500 for his salvage efforts. This judgment is with interest at 4 percent per annum from the date of the entry of judgment pursuant to 46 U.S.C. § 743.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised, it is

ORDERED and ADJUDGED that the plaintiff be awarded $500 for his salvage of the Stanford Morse, plus 4 percent per annum pursuant to the provisions of 46 U.S.C. § 743.