(119 So. 606)

## MOBILE & O. R. CO. v. RED FEATHER COAL CO. (2 Div. 920.)

Supreme Court of Alabama. Oct. 18, 1928.

Rehearing Denied Jan. 24, 1929.

Foster, Rice & Foster, of Tuscaloosa, and Lavender & Thompson and J. T. Fuller, all of Centerville, for appellant.

584

Bowers & Dixon, of Birmingham, for appellee.

BOULDIN, J. The action is for damages for flooding the coal mines of Red Feather Coal Company. Count 2 of the complaint charges:

"Plaintiff was the lessee and was in possession of the following real estate (describing it) on which plaintiff was operating coal mines; that defendant owned a right of way upon which it had constructed a railway track across a valley on said land in which was a running stream; that prior to said date defendant had maintained a trestle across said valley, permitting the water in said stream to flow freely under said railway tracks and across said right of way, and on, to wit, the said date, defendant caused to be constructed and thereafter maintained an embankment across said valley in which was situated said running stream, that on, to wit, February 27th, 1926, there was a rainfall which increased the volume of water in said stream, and as a proximate consequence of the construction and maintenance of said embankment as aforesaid, the water of said stream was diverted from its normal course upon plaintiff's said property, flooding plaintiff's said mines, drowning out and causing plaintiff to lose much coal, to wit, fifteen thousand (15,000) tons, wherefore, plaintiff sues."

Counts 3, 4, and 5, in like form, charge injuries due to rainfalls on March 6, March 13, and March 20, 1926, respectively. These counts are challenged by demurrer for failure to aver negligence in diverting the water from its normal course.

Obstructing the flow of waters, so as to divert same from its natural flow and thereby work injury to the properties of another, is a tort in the nature of a private nuisance. The law charges the tort-feasor with the duty to avoid such result. No express averment or proof of negligence is required. S. A. & M. Ry. v. Buford, 106 Ala. 303, 17 So. 395; Central of Ga. Ry. Co. v. Windham, 126 Ala. 552, 28 So. 392; Lindsey v. So. Ry. Co., 149 Ala. 349, 43 So. 139; So. Ry. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am. St. Rep. 77; N., C. & St. L. Ry. Co. v. Yarbrough, 194 Ala. 162, 69 So. 582; Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412.

The law relating to flooding lands in general, so far as applicable, applies to the flooding of mines. 40 C. J. 1190.

Plaintiff's evidence tended to show flooding of the mines with consequent injury from four successive freshets, the first occurring the latter part of February and the fourth on March 22d. No dates of the two rains in the interim were given. Appellant insists that, because of such omission or failure of proof, it was entitled to the affirmative charge as to counts 3 and 4, alleging injuries on March 6th and March 13th, respectively. Such omission was within the letter and spirit of Circuit Court Rule 35, requiring same to be called to the attention of the trial court, and requiring the court thereupon to permit proof at any time before the conclusion of argument. This rule was not observed by defendant on the trial.

The complaint charged diversion of the waters of a "running stream." The evidence was to the effect that the branch or stream in question drained an area of 45 to 48 acres, usually carried some water 10 months in the year, and was dry two months. Appellant insists this is a fatal variance. This is not a case involving riparian rights of proprietors of lands bordering on a continuously flowing stream. Diverting surface waters, or the waters of an intermittent branch,

or waters of a perennial stream, to the injury of a landowner having a servitude for their free passage, is governed by the same rules of law. In this complaint "running stream" is merely descriptive. It had a channel, under the evidence of both sides, to which its waters were confined, except in times of overflow. It was not inaptly described as a running stream, by way of distinction from unchanneled, spread-out surface water.

Plaintiff's lease ran some 18 months after the alleged flooding of the mines. Evidence of the available coal remaining unmined, its value in place, and of the average daily output, was introduced as going to the quantum of damage. In connection with evidence of available labor supply for that kind of mining, it was competent to show equipment recently installed to increase the output and the capacity of such equipment in handling coal.

Much of the alleged coal consisted of pillars left in the mines in advance work many years before. This coal, under plaintiff's evidence, was being robbed out. In this connection evidence of the size and condition of pillars, small cost of mining same, and the high quality of coal so derived was offered. The evidence of witness Hamp Smith, going to the condition of the mine in this regard, as seen some 15 years before, was properly admitted.

Appellant insists the evidence furnished no sufficient data from which the jury could reasonably ascertain the extent of damage due to flood waters diverted by defendant; that the affirmative charge was due defendant on this ground; and, at all events, the verdict should have been set aside as speculative and excessive.

Defendant for many years maintained a trestle across a little valley, where its right of way crossed over plaintiff's mines. In the fall of 1925 this trestle was replaced with a fill or embankment with a culvert for passage of the water. A few feet off the right of way and above the embankment, and very near the old run of the stream, was a hole in the ground forming an intake for the flow of water into the mine.

Plaintiff's version is that, prior to making the embankment, the water passed freely down the old run, and any overflow spread out in such manner that any substantial flow into the mine was avoided with reasonable effort; that defendant placed its culvert at a point away from the old run of the stream, on higher ground, so that the bottom of the culvert was some 4 feet higher than the old bed of the stream and above the basin about the hole; that the water thus impounded was diverted into and drowned the mine.

Going to the extent, or rather uncertainty as to the extent, of injury from this source, evidence for defendant showed this was an old mine; the main slope had been driven over 6,000 feet. Two other distinct watersheds, covering an acreage of more than four times the area of the one in question, lay above the workings; the mine had been robbed out and abandoned to a point within some 2,000 feet from the entrance. Much evidence was offered touching cave-ins and fissures formed on these watersheds, the flow of water through them, as well as at the mouth of the mine, and at times into the hole in question.

Opposed to this plaintiff offered evidence tending to show control over the intake of water theretofore, that robbing operations had for years kept ahead of the flooding of the mine by seepage, and that flooding was suddenly and greatly increased at first heavy rains after the embankment was constructed. Evidence was offered as to extent of flooding and amount of coal drowned out by each of the rainfalls mentioned in the complaint. There was much conflict in the evidence as to the condition of the mines going to the value of the leasehold interest of plaintiff. We would say the exact extent to which the alleged flooding was due to this embankment was not ascertainable from the evidence. Any such finding would be mere conjecture.

[9] But the rule is: If, upon taking into consideration all the factors, the jury may be reasonably satisfied that substantial injury resulted from the tort complained of, and that such injury was not less than a certain percentage of an ascertained whole, then a verdict may be rendered for such portion. Differently stated, a verdict may go for such sum as can be ascertained with reasonable certainty, although the full extent of the injury referable to defendant's tort may not be ascertainable. Kershaw Mining Co. v. Lankford, 213 Ala. 630, 105 So. 896. Whether under this rule the verdict for $25,000 could be sustained, under the evidence, we need not decide, because of more apparent reasons now to be given.

It is the legal duty of a party, threatened with injury by conditions due to the wrongful act of another, to minimize his damages. What is reasonably required depends upon the extent of threatened injury, as compared with the expense of remedying the situation, and the practical certainty of success in preventive effort. American Railway Express Co. v. Judd, 213 Ala. 242, 104 So. 418; Werten v. K. B. Koosa & Co., 169 Ala. 258, 53 So. 98; L. & N. R. R. Co. v. Sullivan Timber Co., 138 Ala. 379, 35 So. 327; L. & N. R. R. Co. v. Hine, 121 Ala. 239, 25 So. 857; 8 R. C. L. 446, § 16; 17 C. J. 767.

The reasonable cost incurred in preventing the injury becomes an element of recoverable damages. 17 C. J. 806. This rule has been extended to expense incurred prudently and with reasonable prospect of success, although the effort fail. So. Hardware & Supply Co. v. Standard Equipment Co., 158 Ala. 596, 48 So. 357. Without contro-

versy, the culvert of defendant, a pipe 48 inches in diameter, was sufficient to carry all flood waters that did or were likely to come.

According to the weight of the evidence it was placed in the run of the branch at the time; the bottom of the culvert being on a level with the bottom of the channel. The engineer formerly in the employ of plaintiff testified to opening this new channel, so as to divert the water from the old run in close contact with the hole. Much other corroborative evidence is in the record. That this flood water could have been confined to the channel and passed through the culvert with an outlay merely nominal, as compared with the damages claimed, admits of no reasonable controversy. It was merely a question of placing a levee along the channel the full height of the culvert for a distance of probably 200 feet or less. Engineering opinion placed the cost at $50 to $100. Plaintiff's engineer concedes there was ample base for such embankment.

▮▮▮ True, plaintiff offered evidence of sporadic efforts to control the flood water without success, accompanied with opinion evidence that it could not be reasonably done. This conflict justified refusal of an affirmative charge. But we must hold, under all the evidence, including photographs and maps giving the elevations, that a verdict based on such theory is clearly and palpably wrong. The doctrine above announced is peculiarly applicable to a case like this.

Plaintiff claims that at first heavy rainfall water rose in the mines 200 feet on a 1 per cent. slope, causing a loss of some 15,000 tons of workable coal; that three later rains submerged 200 feet, 200 feet, and 600 feet, respectively, the last coming about March 22d, and claimed to have caused a loss of 122,000 tons of coal. As to the first rainfall, it does not clearly appear plaintiff had such knowledge of probable injury as to demand active preventive effort. But thereafter plaintiff was fully warned, had knowledge of the conditions.

▮▮▮ In view of the threat of heavy losses now claimed, plaintiff had the clear duty to act promptly, with the aid of engineering advice, if needed, to effectively prevent the further flooding of its mines. If the culvert sufficient to carry all the flood waters was placed in the run of the stream at the time, defendant may still be liable for injuries from the first rain, to the extent the circular opening narrowed the channel, raised the water level, and caused or increased the overflow of the stream and flooding of the mines. But this would not support a verdict for $25,000.

There was error in denying the motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.