608 F.2d 160
 S. C. LOVELAND, INC., Plaintiff-Appellee, Cross-Appellant,
v.
EAST WEST TOWING, INC., Defendant, Cross-Appellee,
E. & I., Inc., IN PERSONAM, and the TUG MISS CAROLYN, etc.,
IN REM., Defendants-Appellants, Cross-Appellees.
STATE OF FLORIDA, DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant,
v.
S. C. LOVELAND, INC., et al., Defendants-Appellees.
ST. PAUL MERCURY INSURANCE COMPANY et al., Plaintiffs-Appellants,
v.
EAST WEST TOWING, INC., Defendant-Appellee.
 No. 76-4447.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 12, 1979.
 
 Theodore G. Dimitry, Houston, Tex., for St. Paul Mercury Ins., et al.
 Dewey R. Villareal, Jr., Tampa, Fla., for St. Paul Mercury Ins., et al. and East West Towing, Inc.
 E. Clay McGonagill, Jr., Winifred Sheridan Smallwood, H. Reynolds Sampson, Gen. Counsel, Alan E. DeSerio, Tallahassee, Fla., for State of Florida Dept. of Transportation.
 Christian D. Keedy, Miami, Fla., for S. C. Loveland.
 William L. Von Hoene, New Orleans, La., for East West Towing, Inc.
 Ronald A. FitzGerald, Fort Lauderdale, Fla., for E. & I. Inc., etc.
 Appeals from the United States District Court for the Southern District of Florida.
 Before TUTTLE, TJOFLAT and HILL, Circuit Judges.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 These three admiralty cases revolve, to a large extent, around questions of insurance coverage. The occurrences giving rise to these cases are complex and, at first glance, confusing, but the district judge did an admirable job of setting out the facts in his opinion at 415 F.Supp. 596 (S.D.Fla.1976). The district court's conclusions of law, for the most part, also comport with our conclusions. We therefore adopt Judge Roettger's opinion as our opinion on appeal, with one modification.
 
 
 2
 A brief restatement of the key facts and issues will be helpful in understanding our disposition of these appeals. On August 20, 1973, the barge LOVELAND 34, owned by S. C. Loveland, Inc., (Loveland) dragged anchor and crashed into the Sunshine Skyway Bridge, owned by the State of Florida. Two days earlier employees of East West Towing, Inc. (East West) had anchored the barge in spoil banks in close proximity to the bridge and left it there unattended. On August 19, during a thunderstorm, the barge dragged anchor and drifted closer to the bridge and the bridge's owner, the State of Florida, called the Coast Guard. On August 20, the bridge tender twice called the bridge foreman for the State of Florida Department of Transportation who twice notified the Coast Guard that the barge was drifting dangerously close to the bridge. Shortly thereafter during a rain squall the barge collided with the bridge causing damage to the bridge and barge. The bridge employees had been watching the barge with binoculars and could identify it. A ship and at least one barge had previously hit the bridge.
 
 
 3
 The Coast Guard notified Loveland that the barge was against the bridge before hauling it away from the bridge. Loveland called a firm in Tampa and hired a tug which took the barge from the cutter within thirty minutes of receiving the call.
 
 
 4
 The barge had been towed from New Orleans to Tampa by the tug MISS CAROLYN. When the tug and its tow left New Orleans, the tug was owned by East West Towing, Inc., but during the course of the tow, while the tug and the barge were in Panama City, Florida, documents of sale of the MISS CAROLYN to E. & I., Inc. (E. & I.) were executed in New Orleans. The MISS CAROLYN was not, however, delivered to E. & I. until after the East West crew had anchored the barge in spoil banks in the mouth of Tampa Bay. Another tug operated by East West, the GARY STEPHENS, was to have relieved the MISS CAROLYN of the completion of the tow of the LOVELAND 34 to Jacksonville, Florida, but before the GARY STEPHENS could locate the barge the collision occurred.
 
 
 5
 Shortly after the collision, the barge owner, Loveland, sued the tug MISS CAROLYN In rem and East West and E. & I. In personam. East West and E. & I. cross-claimed against each other for damages resulting from any liability to the plaintiff. In a second suit, the State of Florida sued Loveland and East West In personam and the tug MISS CAROLYN and the barge LOVELAND 34 In rem. Loveland cross-claimed against East West and the tug MISS CAROLYN. Finally, St. Paul Mercury Insurance Company (St. Paul) sought a declaratory judgment to declare the policy of insurance issued to East West null and void because of East West's alleged change of ownership or management of the vessel without the underwriters' written consent. Loveland and E. & I. intervened, each asserting an interest as a potential beneficiary of the policy.
 
 
 6
 The three suits were consolidated for purposes of pleading and trial. The trial court ultimately apportioned fault for the collision as follows: 25% To the State of Florida Department of Transportation (as owners of the bridge), 50% To the tug MISS CAROLYN In rem, and 25% To East West In personam for its own fault as well as that of the tug GARY STEPHENS. With regard to insurance coverage, the trial court found the underwriters liable under their policy of insurance issued on the tug MISS CAROLYN because first, the negligent acts of the MISS CAROLYN occurred prior to the time that a change in management and ownership occurred, and second, there was written assent to the change in ownership by virtue of two endorsements issued after the collision and after the change in ownership.
 
 
 7
 The district court's discussion of the time when a change in interest or ownership in the tug MISS CAROLYN occurred relative to the occurrence of the negligent acts for which the tug MISS CAROLYN is liable In rem is substantially correct. See S. C. Loveland, Inc. v. East West Towing, Inc., 415 F.Supp. 596, 609-12. Indeed, the comments we add do not change the result reached by the district court. As the district court noted, the critical question is whether to apply the law of Louisiana or Florida, for the Civil Code of Louisiana may not require delivery as a condition of passage of title while Florida's Uniform Commercial Code requires delivery to the purchaser in order for title to pass. The district court ultimately applied Florida law, concluding that in determining the validity and effect of a transfer of title in personalty, the universally recognized conflicts law is that Lex rei sitae or the law of the place of the situs of the personalty governs. While we agree with the district court's analysis and application of Florida law, we note that the district court initiated its discussion by stating "in questions involving contract interpretation, admiralty conflicts law recognizes the principle of Lex loci contractus ; that is the law of the place where the contract is made." Id. at 610. While that is a correct rule of conflicts in the case of maritime contract, the district court was not bound to apply the admiralty conflicts rule in this case because a contract for the sale of a ship is not a maritime contract. Atlantic Lines, Ltd. v. Narwhal, Ltd., 514 F.2d 726, 731 (5th Cir. 1975); Richard Bertram & Co. v. The Yacht, Wanda, 447 F.2d 966, 967 (5th Cir. 1971); The Ada, 250 F.2d 194, 195 (2d Cir. 1918); Camper and Nicholsons, Ltd. v. The Yacht " Fontainebleau II", 292 F.Supp. 734, 735 (S.D.Fla.1968); Grand Banks Fishing Co. v. Styron, 114 F.Supp. 1 (D.Me.1953). Hence, the application of Florida law under the circumstances is unfettered by suggestions that admiralty conflicts law would require the application of Louisiana law. We find the district court's decision to apply Florida law in determining the time of the passage of title to the tug MISS CAROLYN firmly grounded in reason and authority, and we therefore affirm the court's holding East West liable In personam for its negligence in leaving the barge unattended in an exposed area in close proximity to the bridge, improperly anchoring the barge in a spoil bank, failing to safeguard the anchored barge, failing to inform the barge's owners of the change in circumstances, and failing to obtain a relief tug. We also affirm the court's holding the underwriters liable under their policy of insurance issued on the tug MISS CAROLYN. The finding that the tug GARY STEPHENS was negligent in failing to pick up the unattended barge promptly and failing to come to the aid of the barge before it dragged anchor was likewise correct.
 
 
 8
 The district court held that negligence of the State of Florida Department of Transportation was also a proximate cause of the collision and resulting damages. Following the rule adopted in United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the court allocated damages among the parties "proportionately to the comparative degree of their fault," Id. at 411, 95 S.Ct. at 1716, 44 L.Ed.2d at 262, and apportioned twenty-five percent of the fault in the collision to the State of Florida Department of Transportation. The court found that the state's negligence consisted of its agents' failure to do no more to prevent the drifting barge from colliding with the bridge than to contact the Coast Guard. The court found that afternoon thundershowers in the area in August are a common and foreseeable occurrence and that squalls in fact occurred on both the afternoons of August 19th and 20th. Thus the possibility of a collision was foreseeable to the agents of the state watching the barge drift toward the bridge, particularly in view of prior collisions of a ship and at least one other barge with the bridge. Specifically, the state made no efforts to determine the ownership of the barge and contact its owner although the employees could identify the barge. At the time the owner was frantically trying to locate the barge and he acted promptly after learning its whereabouts, thus indicating that he would have taken the necessary steps to have the barge taken under tow. Also the state made no effort to summon any of the many tugs in the area to come to the assistance of the apparently abandoned barge. The quick response of the tug later hired by the owner indicated that this course of action would have prevented the collision. The court noted that this action might have involved some expense to the state[1] but that, more important, it would have prevented damage to the state. Instead, according to the court, the state did nothing more than call the Coast Guard and watch the barge drift into the side of its bridge.
 
 
 9
 The State of Florida Department of Transportation has appealed from the trial court's holding the state negligent and therefore liable for a portion of the damage to its bridge arguing: if the state had any duty to act in these circumstances, it owed that duty to the people of Florida and not to the barge owner; by calling the Coast Guard the state acted reasonably and discharged any duty to act; courts have found bridge owners negligent in the operation of bridges but not for failure to manage drifting vessels owned by others.[2]
 
 
 10
 The admiralty and maritime jurisdiction of the United States extends to cases of damage to property on land caused by a vessel in navigable waters, 46 U.S.C.A. § 740, and the admiralty rule adopted in Reliable Transfer requires allocation of damage liability proportionate to the relative fault of each party, but admiralty law itself does not always supply the standard of conduct to be applied in a maritime case. If a situation is not governed by statute, rules made under the authority of a statute, or maritime custom, then conduct is judged according to principles of tort law, especially of negligence.[3]
 
 
 11
 Florida made a claim against the other parties in this case for damages to its bridge; the barge owner made no claim against the state for damage to its barge. The district court essentially found the state guilty of contributory negligence[4] which in admiralty law operates as comparative negligence.[5] A plaintiff is contributorily negligent when his conduct falls below the standard to which he is required to conform for his own protection.[6] The standard is that of a reasonable person under like circumstances.[7] Plaintiff's negligence is "disregard for his own safety and not necessarily such as threatens to invade any of defendant's legal rights." Nesbit v. Everette, 243 F.2d 59 (5th Cir. 1957). Contributory negligence does not involve breach of any duty owed others[8] but, rather, a failure reasonably to safeguard one's own person or property. Failure to act as one should may constitute contributory negligence. Neal v. Saga Shipping Co., S.A., 407 F.2d 481 (5th Cir. 1969), Cert. denied, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1968), Rehearing denied, 396 U.S. 871, 90 S.Ct. 45, 24 L.Ed.2d 129 (1968). The district court found that the state breached its duty to exercise reasonable care and take reasonable precautions for the safety and protection of its own property and was therefore negligent, and that this negligence was a proximate cause of the collision and damages. Questions of contributory negligence and proximate cause are fact questions, Safe Harbor Enterprises, Inc. v. Hill, 301 F.2d 139, 139 (5th Cir. 1962), and findings of fact of the trial court in admiralty are binding on us unless clearly erroneous. Movible Offshore, Inc. v. M/V Wilken A. Falgout, 471 F.2d 268, 271-72 (5th Cir. 1973); Horton & Horton, Inc. v. T/S J. E. Dyer, 428 F.2d 1131, 1135 (5th Cir. 1970), Cert. denied sub nom. Horton v. Horton, Inc. v. Vaughan Marine, Inc., 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); Sisung v. Tiger Pass Shipyard Co., 303 F.2d 318, 322 (5th Cir. 1962), Safe Harbor Enterprises, Inc. v. Hill, 301 F.2d 139, 139 (5th Cir. 1962).
 
 
 12
 We thus reject the state's argument that it breached no duty to those who owned or were responsible for the barge. Contributory negligence resulting in a diminution of damages otherwise recoverable may exist even though there be no breach of a duty to another. Stated another way, one may be guilty of negligence in the care of one's own property and thus suffer a reduction of recoverable damages, even though such negligence would not be actionable in a claim by another. We also decline to accept the state's characterization of its activities in the circumstances as "reasonable" in view of the district court's finding to the contrary. We find the state's argument that it did all it reasonably could be expected to do by repeatedly notifying the Coast Guard, the agency responsible for floating dangers to navigation, forceful. This argument, however, was addressed to the finder of fact and we cannot say that the district judge lacked sufficient evidence to find the state negligent. The question is not whether we would have found otherwise but, rather, "whether the trial court could permissibly find as it did." Movible Offshore, Inc. v. M/V Wilken Falgout, 471 F.2d 268, 271 (5th Cir. 1973).
 
 
 13
 We now turn to the state's contention that As a matter of law it cannot be found negligent for failing to manage the drifting barge. It is true that the negligence of bridge owners is typically based on acts or omissions more closely related to bridges themselves improper construction, failure to lift a draw, or improper communication of a bridge tender with a vessel. In United States v. Barge CBC, 233 F.Supp. 85 (E.D.La.1964), the owner of a pontoon bridge brought an action against a barge and its owner for damage caused by collision. The barge became unmoored during heavy rains, collided with the bridge, and eventually broke through the bridge. The barge owner asserted that the bridge owner was contributorily negligent in failing to attempt to remove or secure the barge before its breakthrough. The court held that the barge owner failed to meet its burden of proof; it failed to offer evidence that equipment was available to the bridge owner to secure the barge in time, and the bridge owner showed that removal in time was not feasible due to an obstruction and to insufficient traction for its equipment. Id. at 88. In that case the defendant asserted that the plaintiff was negligent after the collision while in the present case plaintiff was found negligent for not preventing the collision. Both cases, however, involve failure to secure or remove a drifting vessel, and the court in Barge CBC at least implied that failure to secure or remove, if feasible, would constitute contributory negligence.
 
 
 14
 We do not base our resolution of what may well be an issue of first impression in admiralty law on the absence of cases finding negligence in fact patterns identical to those in the instant case. Rather, because no statute, regulation, or maritime custom controls, we again turn to common law, specifically the law of nuisance as related to contributory negligence and the rules of damages involving avoidable consequences.
 
 
 15
 It appears that the only modification of the reasonable person standard that might support the state's contentions in the present case is found in the law of nuisance. Further, many of the better discussions of the nature of the duty of one threatened with injury to his property are found in nuisance cases, and where a nuisance is itself caused by negligence, analysis of nuisance is so similar to analysis of other torts as to be almost undistinguishable. Thus, we may safely look to nuisance cases for guidance in resolving this question.
 
 
 16
 The term nuisance is notoriously difficult to define,[9] but it is at least possible that the drifting barge constituted a nuisance.[10] If so, did or could the state's acts or omissions constitute either contributory negligence or a failure to avoid damages?
 
 
 17
 In a nuisance setting it is often difficult to distinguish a plaintiff's contributory negligence from his failure reasonably to avoid foreseeable consequences. In fact some courts and commentators discuss the two together while noting that the former bars a plaintiff's claim while the latter only reduces his damage award.[11] In principle one is required to avoid or mitigate damages only after the defendant has committed a tort but in a nuisance context the threat itself can be viewed as the tort. In the present case the result of finding that the state was contributorily negligent or that it failed to avoid foreseeable consequences is precisely the same reduction of damages.
 
 
 18
 Some courts and commentators have flatly stated that contributory negligence is not a defense to nuisance liability.[12] Others including the authors of the Restatement of Torts have stated that contributory negligence is a defense to a nuisance resulting from negligent conduct of the defendant.[13] Some courts have declared that a plaintiff need not abate a nuisance or take affirmative steps on his premises to ward off a nuisance.[14] Others have found plaintiff's claim barred when, without committing a trespass, he could have abated a nuisance caused by defendant's negligence.[15] Specifically, courts have found plaintiffs contributorily negligent for failing to bury an animal decomposing on adjacent land, Central of Georgia Ry. Co. v. Steverson, 3 Ala.App. 313, 57 So. 494 (1911), and failing to avoid flood damage by building a levee, Mobile & O. R. Co. v. Red Feather Coal Co., 218 Ala. 582, 119 So. 606 (1928), or by plowing a furrow, Louisville & N. R. Co. v. Moore, 31 Ky. 141, 101 S.W. 934 (1907) (proof of failure to plow requires the trial court to instruct the jury on remand that no damages avoidable by plaintiff's exercise of ordinary care be awarded).
 
 
 19
 In admiralty, contributory negligence does not bar a plaintiff's claim but only serves to lessen his recoverable damages in proportion to his fault as compared to defendant's. The more recent commentaries have argued persuasively that contributory negligence does and should operate in the nuisance area just as in other areas of tort law, and some courts have found plaintiffs contributorily negligent for failing reasonably to abate a nuisance or avoid its consequences (although a "trend" is less clear in case law than in commentaries). A finding of contributory negligence might well be incorrect as a matter of law in a case where the defendant acted willfully or recklessly[16] or where a plaintiff could protect himself only by committing a trespass.[17] Here, however, those responsible for the barge acted only negligently and the state or a tugboat company could have secured or removed the barge without committing a trespass.[18] Noting these aspects of this case and the fact that contributory negligence does not act as a bar in admiralty, we support the district court's finding of contributory negligence even if the drifting barge constituted a nuisance.
 
 
 20
 A plaintiff is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of a tort.[19] The reasonableness of a plaintiff's act or omission depends on "the extent of threatened injury, as compared with the expense of remedying the situation, and the practical certainty of success in preventiveeffort." Mobile & O. R. Co. v. Red Feather Coal Co.,218 Ala. 582, 119 So. 606 (1928).[20]
 
 
 21
 In the present case the district court found that the possibility of a collision was foreseeable to agents of the state and noted that ascertaining and notifying the barge's owner or calling a local towing service would have required either "some" or no expenses. The collision caused the bridge to sustain damages of $123,025.47 and required closing two lanes of traffic. Any expenses in summoning aid pale in comparison.
 
 
 22
 We therefore reject the state's argument that its fault could not be based on failure to act in these circumstances, whether such omission be described as contributory negligence or failure to avoid damages.
 
 
 23
 We agree with the district court's conclusion that the doctrine of last clear chance is inapplicable in this case. As the district court's canvass of authority indicates, the doctrine of last clear chance is rarely applied in admiralty collision cases[21] and then only where there is a definite line of cleavage between the final fault and the preceding acts of negligence, 415 F.Supp. at 606-07; Accord, J. Griffin, Supra note 3, at § 215 (1949). See generally Annot. 3 A.L.R. Fed. 203 (1970). We find a lack of cleavage on these facts for purposes of applying the last clear chance doctrine.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The Court added, however, that a tug that towed or secured this barge would have had a lien on the barge, thus the state would be free of such expense
 
 
 [2]
 We have examined the state's other arguments and find them without merit
 
 
 [3]
 Pennsylvania Railroad Company v. S. S. Marie Leonhardt, 202 F.Supp. 368, 375 (E.D.Pa.1962), Aff'd 320 F.2d 262 (3d Cir. 1963); G. Gilmore and C. Black, The Law of Admiralty 398-402, 420 (1957); J. Griffin, The American Law of Collision § 204 (1949). It is true that certain maritime law principles are sometimes helpful in deciding cases of collisions with bridges: bridges are obstructions to navigation and the right of navigation is paramount, land traffic is subservient, Pennsylvania Railroad Co. v. S. S. Marie Leonhardt, 202 F.Supp. 368, 376 (E.D.Pa.1962), Aff'd 320 F.2d 262 (3d Cir. 1963); any presumption that a moving vessel colliding with a fixed portion of a bridge is negligent disappears when evidence is presented, Pennsylvania Railroad Co. v. S. S. Marie Leonhardt, 320 F.2d 262, 264 (3d Cir. 1963). In the present case, however, the negligence of those responsible for the drifting barge is clear and it does not appear that the district court based its finding of the state's negligence on the former presumption
 
 
 [4]
 "The State of Florida, Department of Transportation has a duty to exercise reasonable care and take reasonable precautions for the safety and protection of its own property. The court finds that the State of Florida, through its agents, breached this duty and is therefore negligent." 415 F.Supp. at 606
 
 
 [5]
 See United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed. 251 (1975). Prior to this decision, admiralty law in the United States required an equal division of damages among those guilty of contributory fault. (Other maritime nations adopted the rule of divided damages earlier.) Contributory fault has never barred plaintiff's claim in admiralty. According to Griffin, admiralty courts have been more willing to find contributory fault than have common law courts where such fault acts as a total bar. J. Griffin, Supra note 3, at § 216
 
 
 [6]
 Restatement (Second) of Torts § 463 (1965); W. Prosser, The Law of Torts 416 (4th ed. 1971)
 
 
 [7]
 Restatement (Second) of Torts § 464 (1965); W. Prosser, Supra note 6, at 419
 
 
 [8]
 Restatement (Second) of Torts § 463, Comment b (1965); W. Prosser, Supra note 6, at 418; James, Contributory Negligence, 62 Yale L.J. 691, 723 (1953)
 
 
 [9]
 "There is general agreement that (the word 'nuisance') is incapable of exact or comprehensive definition." W. Prosser, Supra note 6, at 571. The Restatement divides nuisance into two types, an unreasonable interference with a right common to the general public (public nuisance) and a nontrespatory invasion of another's interest in the private use and enjoyment of land (private nuisance). Restatement (Second) of Torts §§ 821B and 821D. It is often said that a public nuisance is always a criminal offense (the Restatement rejects this view, Id. at §§ 821B, Comment d) and there is some question whether there may be tort liability for a public "nuisance" that is not a crime, W. Prosser, Supra note 6, at 586
 
 
 [10]
 "(A) condition . . . that unduly interferes with the use of . . . a public place . . . (is a nuisance). The interference may make the use of the affected area . . . dangerous or prevent its utilization." Seavey, Nuisance: Contributory Negligence and other Mysteries, 65 Harv.L.Rev. 984, 984-85 (1952)
 
 
 [11]
 See, e.g., Ford Motor Co. v. Dallas Power & Light Co., 499 F.2d 400, 414-15 (5th Cir. 1974); C. McCormick, Law of Damages 128-30, 137-40 (1935); W. Prosser, Supra note 6, at 608-12; Seavey, Supra note 10, at 988-90
 
 
 [12]
 See, e. g., Paddock v. Somes, 102 Mo. 226, 14 S.W. 746 (1890); F. Harper & F. James, The Law of Torts § 22.8 (1956); James, Supra note 8, at 715-23; H. Wood, The Law of Nuisances 126, 506-07 (2nd ed. 1883)
 
 
 [13]
 See, e. g., McFarlane v. Niagara Falls, 247 N.Y. 340, 160 N.E. 391 (1928) (Judge Cardozo disavowed any holding by implication that would apply to a situation where a defendant's conduct went beyond negligence); Restatement (Second) of Torts § 840B (1965) and Comment d which states that "many nuisances . . . are the result of mere negligence in failing to take proper precautions to prevent the invasion of the right. When this is the case the contributory negligence of the plaintiff is available as a defense as fully and under the same rules and conditions as in the case of any other action founded upon negligence"; C. Martz, Rights Incident to Possession of Land 72-73 (1954); W. Prosser, Supra note 6, at 608-12 (also noting the difficulty in drawing the dividing line between intent and negligence). Cf. Seavey, Supra note 10, at 986-88 (negligence is a requisite to liability for a nuisance except where defendant is aware of the harmful effects created by his conduct)
 
 
 [14]
 See, e. g., Paddock v. Somes, 102 Mo. 226, 14 S.W. 746 (1890); Annot., 73 A.L.R.2d 1378, 1383-85. For commentary supporting the correctness of this view see F. Harper & F. James, and H. Wood, note 12, Supra
 
 
 [15]
 Wis. & Ark. Lumber Co. v. Scott, 167 Ark. 84, 267 S.W. 780 (1924); Louisville, N. O. & Texas R. Co. v. Jackson, 123 Ark. 1, 184 S.W. 450 (1916). For instances of courts holding that a plaintiff was under no duty to abate a nuisance or avoid or minimize damages specifically because to do so plaintiff would have to commit a trespass, See Missouri Pac. R. Co. v. Baker, 188 Ark. 143, 64 S.W.2d 321 (1933); Chicago R. I. & P. R. Co. v. Carey, 90 Ill. 514, 517 (1878); Wolf v. St. Louis Independent Water Co., 15 Cal. 319 (1860)
 
 
 [16]
 "When the harm is intentional or the result of recklessness, contributory negligence is not a defense (to nuisance)." Restatement (Second) of Torts § 840B(2) (1965)
 
 
 [17]
 See, e. g., Missouri Pac. R. Co. v. Baker, 188 Ark. 143, 64 S.W.2d 321 (1933)
 
 
 [18]
 The district court stated that a tug towing or securing the barge would have had a lien on the barge. 415 F.Supp. at 603. For a discussion of the nature and incidents of salvage, See G. Gilmore & C. Black, Supra note 3, at 443-79
 
 
 [19]
 See, e. g., C. Martz, Supra note 13, at 46 & n.33, 151 & n.31; C. McCormick, Supra note 11, at 127-41; Restatement (Second) of Torts § 918 (1977)
 
 
 [20]
 Our holding does not address the issue whether plaintiff's duties were both to avoid harm to itself and also to avoid harm to third parties threatened by plaintiff's inaction. This issue is not before us; it may be controlled by state negligence law, and a proper analogy might be to those cases dealing with a person's duty to rescue another
 
 
 [21]
 The doctrine was applied, however, in The Sanday, 122 F.2d 325 (2d Cir. 1941), and The Cornelius Vanderbilt, 120 F.2d 766 (2d Cir. 1941). In Crawford v. Indian Towing Co., 240 F.2d 308, 311 (5th Cir. 1957), this Court found that one vessel "clearly had the last clear chance to avoid the collision." The other vessel's negligent action was not the proximate cause of the injury and thus not a basis of liability "(w)hether this be called an application of the doctrine of last clear chance or the rule of causation . . . ."